```
              IN THE UNITED STATES DISTRICT COURT
           FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL J. D'Alessandro           )
                                  )
          Plaintiff,              )
                                  )   Civil Action No. 03-1035
                                  )
                                  )
     v.                           )   JUDGE DAVID S. CERCONE
                                  )
BOROUGH OF JEFFERSON HILLS,       )
BOROUGH OF JEFFERSON HILLS POLICE )
DEPARTMENT, MAYOR MARY E.         )
LARCINESE,individually and in     )   MAGISTRATE JUDGE
her official capacity, and CHIEF  )   FRANCIS X. CAIAZZA
OF POLICE JOHN L. MAPLE,          )
individually and in his official  )
capacity.                         )
                                  )
          Defendants              )
                                  )
```

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

Michael J. D'Alessandro ("D'Alessandro") is a police officer in Jefferson Hills Borough. In July 2003 he filed suit pursuant to 42 U.S.C. § 1983, alleging that his constitutional rights were violated when the Defendants (hereinafter referred to collectively as "the Borough") subjected him to repeated adverse employment action in retaliation for engaging in political speech and association. D'Alessandro also alleged that the Borough's Mayor, Mary E. Larcinese ("Larcinese"), and its Chief of Police, John L. Maple ("Maple"), conspired to violate his rights, and are responsible under state law for the intentional infliction of

emotional distress.[1] The Borough's motion for summary judgment on the retaliation claims (Doc. 25) is pending. It is respectfully recommended that the motion be denied.

## II. DISCUSSION

### A. Background

In 1985 D'Alessandro was hired by the Borough as a patrol officer. At the time, Maple also worked as a police officer; he was promoted to chief of police in 1990. Although there was occasional friction between the two men, D'Alessandro performed his duties without incident and had a clean disciplinary record. This period of relative equanimity in the relationship lasted until 1997 when the two supported rival candidates for Borough mayor. D'Alessandro made no secret of his preference, attending a fund-raiser on behalf of "his" candidate, and speaking openly to those who asked about how he planned to vote. Maple, predictably enough, supported Larcinese, the other, ultimately victorious contender. It is undisputed that Maple and Larcinese knew, prior to the election, that D'Alessandro did not support Larcinese. They were not pleased. When he learned that D'Alessandro had attended the fund-raiser for Larcinese's opponent, Maple allegedly told him to "keep his [adjective deleted] nose out of

---

[1] The Fifth and Fourteenth Amendment claims and the pendent state claim for intentional infliction of emotional distress have been abandoned. D'Alessandro has also consented to dismiss the Jefferson Hills Police Department as a defendant.

Borough politics." (Pl. Br. in Supp. Mot. Summ. J. 2).[2]

D'Alessandro contends that during the campaign and after Larcinese took office, his relationship with Maple unraveled. D'Alessandro states that Maple began to harass him, often interfering with his ability to function effectively in his job. According to D'Alessandro, his support for Lucinese's opponent in the mayoral election caused him to be subjected to false rumors and accusations, treated with disrespect, investigated, criticized, reprimanded, denied promotion, demoted, and suspended, all at the direction of Lucinese and Maple. He also maintains that the Borough failed adequately to instruct, train, and supervise the mayor and police chief, acquiescing in their failure to uphold, apply, and enforce the law.

In its motion, the Borough does not reach the merits of D'Alessandro's allegations. Instead, it claims entitlement to summary judgment on the ground that D'Alessandro has failed to establish that the negative treatment about which he complains was even remotely linked to his political activity.

### B. Standard of Review

Summary judgment is appropriate only where the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment

---

[2]The Borough does not contest this allegation. (Def. Stmt. of Facts 2).

as a matter of law. Fed. R. Civ. P. 56(c). The mere existence of some evidence favoring the non-moving party will not defeat the motion.  There must be enough evidence with respect to a particular issue to enable a reasonable jury to find in favor of the non-moving party. <u>Anderson v. Liberty Lobby</u>., 477 U.S. 242, 248 (1986). A motion for summary judgment will be granted where the materials in the record, if reduced to admissible evidence, would be insufficient to satisfy the non-moving party's burden of proof at trial. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

### C. <u>Retaliation - The Prima Facie Case</u>

The Borough's motion for summary judgment is narrow, resting on the single contention that the record fails to establish causation for purposes of D'Alessandro's § 1983 retaliation claims.

A public employee's "constitutional right to speak on matters of public concern without fear of retaliation" is firmly rooted in the First Amendment. <u>Baldassare v. N.J.</u>, 250 F.3d 188, 194 (3d Cir. 2001). The framework for evaluating a public employee's contention that he has suffered retaliation for engaging in protected activity is also well established.

In order to satisfy the causation component of a retaliation claim, a plaintiff must be able to show: (1) that the defendant has taken adverse action against him; and (2) that the adverse action was taken in response to the plaintiff's participation in

-4-

protected activity. Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 800 n.3 (3d Cir. 2000). (Greenberg, J. concurring in part and dissenting in part). The Borough concedes that D'Alessandro engaged in protected activity, and that he suffered a number of adverse employment actions. It attempts, however, to define those actions narrowly, asking that the court consider only those actions that resulted in formal discipline. D'Alessandro, on the other hand, contends that every instance in which he was corrected, investigated, reprimanded, or suspended, constituted an adverse action which contributed to the overall atmosphere of hostility and animosity in which he was required to function.

The court agrees with D'Alessandro, and will consider the Borough's conduct as a whole. "[A] plaintiff may be able to establish liability under section 1983 based upon a continuing course of conduct even though some or all of the conduct complained of would be *de minimis* by itself or if viewed in isolation." Schneck v. Saucon Valley Sch. Dist., 340 F. Supp. 2d 558, 580 (E.D. Pa.2004)(quoting Brennan v. Norton, 350 F.3d 399, 419 n.16 (3d Cir. 2003)). "[Courts] should not consider the record solely in piecemeal fashion, giving credence to innocent explanations for individual strands of evidence, for a jury . . . would be entitled to view the record as a whole. Howley. v. Town of Stratford, 217 F.3d 141, 151 (2d Cir. 2000). It is against the background of the entire record, then, that the court considers

the Borough's argument with respect to causation.

### D. **The Alleged Retaliatory Acts and Causation**

#### 1. **Retaliatory Acts**

Relying on the record, the court has compiled the following chronology[3] detailing the dates on which D'Alessandro claims to have engaged in protected activity and describing the retaliatory action allegedly taken in response:

- **1997** - The mayoral campaign and election took place. D'Alessandro attended a fundraiser for Larcinese's opponent and voiced his support for this candidate when asked. Maple told D'Alessandro to keep "his nose" out of Borough politics.

- **1998** - Larcinese took office as mayor. D'Alessandro was passed over for promotion to sergeant, and was told by Maple that he had not been promoted because of his political affiliation. The slight was described as a little "kiss" from Larcinese for not supporting her. D'Alessandro alleges that Maple increasingly treated him more harshly than he did other officers.

- **1999** - While working for the Borough, D'Alessandro injured his left elbow.

- **2000** - **September**. D'Alessandro was told by Maple that he could not return to work on a light duty basis, as specified by D'Alessandro's physician because there were no light duty positions in the department. D'Alessandro knew of two officers who had been given

---

[3]This chronology does not contain the post June 2003 allegations of protected activity and subsequent retaliation raised in connection with the motion for summary judgment. These allegations are somewhat vague as to date, are not fully discussed, and do not have any impact on the court's disposition of the pending motion.

light duty assignments in the past.

- **2001** - **October**. D'Alessandro was suspended when Maple found him parked next to another officer in an adjoining parking lot during a break  Both of the officers involved were suspended. D'Alessandro's suspension was longer, even though the other officer had been suspended previously for the same offense. D'Alessandro appealed his suspension to the Civil Service Commission where it was overturned.

- **2001** - **November**. D'Alessandro was criticized for not filing charges in connection a disturbance at a local motel. D'Alessandro contends that the motel owner was satisfied with his resolution of the incident. Maple termed D'Allesandro's handling of the situation "a serious event," but did not take disciplinary action.

- **2001** - **November**. D'Alessandro was the only police officer whose tires were tested multiple times at Maple's direction when the newly laid sod at the same motel was "turfed." The test results were inconclusive, and D'Alessandro was not disciplined.

- **2001** - **November**. D'Alessandro was suspended and demoted when Larcinese reviewed call tapes which she said contained proof that D'Alessandro had failed to call in during one of his shifts. She stated that he also failed to provide backup for other officers during the same shift. D'Alessandro explained that the two calls were very close together, coming during a twenty-three minute period when he was out of his car checking a building. Maple rejected this explanation, stating that D'Alessandro never leaves his car to check buildings. Maple had last patrolled with D'Alessandro about fifteen years earlier. The call tapes showed that D'Alessandro <u>had</u> made contact with the department during his shift. His suspension was rescinded on the advice of the Borough Solicitor, and he was restored to

his former rank.

- **2002** - **August**. While he was in a convenience store, D'Alessandro heard from another officer that a third officer damaged a police car when he collided with a deer. D'Alessandro took a disposable camera from the convenience store and left to take pictures of the car and skid marks on the road. He did not have authorization to conduct this investigation, and later lied about having done so. Discipline was not imposed at the time.

- **2003** - **March**. A fellow officer reported that D'Alessandro had been abusive, using profanity in the presence of a female dispatcher. A five day suspension was imposed. D'Alessandro appealed the suspension which was overturned.

- **2003** - **June**. D'Alessandro was reprimanded for failing to conduct a patrol at a local water plant. D'Alessandro stated that he was sick on the day in question and arranged for alternate coverage when he was reminded that he had plant duty. On the same day that he was reprimanded for not inspecting the water plant, D'Alessandro was reprimanded a second time and suspended for the unauthorized accident investigation that he had conducted nearly a year earlier. D'Alessandro appealed the suspension to the Civil Service Commission. The Commission overturned the suspension, expressing concern about the Borough's disregard for procedural due process.

### 2. Causation

Because it is undisputed that D'Alessandro was subject to significant adverse action on the part of the Borough, the court moves to the second prong of the causation analysis. Once a plaintiff alleging retaliation in violation of § 1983 provides evidence that he has suffered adverse action, he must show that the action was motivated by his exercise of a protected right.

The plaintiff's ability to make this showing does not depend on the application of a rigid formula. A plaintiff may rely on "a broad array of evidence" to establish the causal link. Abramson v. William Paterson College of N.J., 260 F.3d 265, 288 (3d Cir. 2001) (quoting Farrell v. Planters Lifesavers Co., 206 F.3d 281, 284 (3d Cir. 2000)). The Court of Appeals for the Third Circuit has, however, identified two factors which are particularly important in forging the requisite causal link: timing, and evidence of ongoing antagonism. Farrell, 206 F.3d at 281.

The Borough argues that four years passed between D'Alessandro's protected activity and the first allegedly retaliatory act - D'Alessandro's suspension for parking next to another officer. According to the Borough, this lengthy gap conclusively negates any possible inference of causation. The court disagrees. Having carefully reviewed the record, the court is convinced that the gap calculated by the Borough is artificially wide. The Borough's measurement depends upon the court's willingness to ignore evidence which might suggest to a jury that D'Alessandro was subject to retaliatory action beginning soon after the mayor took office.

When it ruled on the Borough's motion to dismiss, the court concluded that two of the substantive events for which D'Alessandro sought recovery, the 1998 failure to promote, and the 2000 failure to accommodate his request for light duty, were

-9-

time-barred. The court stated that D'Alessandro could not "resuscitate these stale claims through the continuing violations theory, nor [could] he rely on them as the basis for [the] current complaint." (Rep. and Rec. 9). That statement is accurate. The conduct alleged in the time barred claims is <u>not</u> actionable and cannot constitute a substantive basis for recovery.  This does not mean, however, that the court must turn a blind eye to these events and treat them as though they never happened.

Under both Title VII and § 1983, conduct occurring outside of the statutory period within which a claim must be filed may nonetheless be relevant to show the motive for conduct falling within the period. Thus, although the failure to promote and the failure to accommodate claims cannot be grounds for recovery, they may be considered insofar as they bear on the motive underlying adverse action taken by the Borough which is not time barred. An act "which is not made the basis of a timely charge . . . may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue." <u>Reed v. Lockheed Aircraft Corp.</u>, 613 F.2d 757, 760 (9th Cir. 1980)(quoting <u>United Air Lines, Inc. v. Evans</u>, 431 U.S. 553, 558 (1977)).

Information regarding conduct that is not independently actionable may be extremely valuable in determining a defendant's intent. <u>Rodriguez v. Torres</u>, 60 F. Supp. 2d 334 (D.N.J. 1999).

-10-

The time-barred events in this matter strengthen the proposition that there was an arguable, albeit not conclusive, temporal nexus between D'Alessandro's political activity and the Borough's alleged retaliation. The same time-barred action may also mark the beginning of escalating antagonism which seems to be documented by the rest of the record.

The record shows, and the parties agree, that Maple told D'Alessandro to stay out of politics. He also allegedly told D'Alessandro that he would have been promoted if he had supported Lucinese. Maple found fault with D'Alessandro regularly after the mayoral election, and the magnitude of the infractions attributed to D'Alessandro was certainly exaggerated - much ado over what ultimately amounted to very little. In some instances, no disciplinary action was taken, and, without exception, D'Alessandro's suspensions was overturned on appeal. Something was amiss.

The record tells the court very little about what that something was. Based on what <u>is</u> in the record, however, the court cannot conclude as a matter of law that the issue was <u>not</u> D'Alessandro's political activity.

### III. CONCLUSION

Because the record evidence is sufficient to allow a reasonable juror to conclude that the Borough violated the provisions of 41 U.S.C. § 1983 by retaliating against D'Alessandro for the exercise of rights protected by the First

Amendment, the Borough's Motion for Summary Judgment (Doc. 25) should be denied.

In accordance with the Magistrate's Act, 29 U.S.C. § 636 (b) (1) (B), 636 (b)(1)(b) and (c), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by January   , 2006.  Responses to objections are due by January   , 2005.


January   , 2006


                                        S/Francis X. Caiazza
                                        Francis X. Caiazza
                                        United States Magistrate Judge


cc:
Suzanne B. Merrick, Esq.
Thomas, Thomas & Hafer
One Oxford Center
301 Grant Street, Suite 1150
Pittsburgh, PA 15219


Joel S. Sansone, Esq.
Scanlon & Sansone
428 Forbes Ave.
2300 Lawyers Bldg.
Pittsburgh, PA 15219